UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| MICHAEL SHEPHERD, ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> NANCY A. BERRYHILL, ) <br> Acting Commissioner Of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Civil No. 6:17-cv-00141-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Michael Shepherd seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied his claim for supplemental security income and disability insurance benefits. Mr. Shepherd brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will **DENY** Mr. Shepherd's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

**A**

Plaintiff Michael Shepherd initially filed an application for Title II disability insurance benefits and supplemental security income on October 4, 2013, alleging disability beginning September 1, 2011. [Transcript (hereinafter, "Tr.") 35.] Mr. Shepherd's claim was initially denied on February 25, 2014, at which time he requested reconsideration. *Id.* On July 10, 2014, he filed a request for a hearing, which was held on January 29, 2016. *Id.* On April 13, 2016, Administrative Law Judge Bonnie Kittinger returned an unfavorable decision for Mr. Shepherd.

*Id*. at 48. He requested review from the Appeals Council who denied this request. *Id*. at 1.

To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claim) *with* 20 C.F.R. § 416.920 (claims for supplemental security income).[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." C.F.R. § 404.1530(d). Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assess an individual's ability to perform certain physical and metal work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his RFC, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that his impairments were disabling prior to the date on which his insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Mr. Shepherd last met the insured status requirements of the Social Security Act on September 30, 2014. Tr. 38; *see also* 20 C.F.R. § 404.131. Then, at step one, the ALJ found Mr. Shepherd did not engage in substantial gainful activity since September 1, 2011, the alleged onset date. Tr. 38. At step two, the ALJ found Mr. Shepherd to suffer from the following severe impairments: spine disease, including bulging discs with low back pain, neck pain, and radiculopathy; diabetes mellitus; history of coronary artery disease; and heart attack with stent placement. *Id.* At step three, the ALJ determined that his combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. *Id.* at 41. Before moving on to step four, the ALJ considere the record and determined Mr. Shepherd possessed the following residual functioning capacity:

> [Mr. Shepherd] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he is able to lift/carry 20 pounds occasionally, 10 pounds frequently. He is able to stand/walk up to four hours in an eight-hour workday, in intervals up to 40 minutes. He is able to sit up to six hours in an eight-hour workday, in intervals up to 60 minutes. He is limited to no more than frequent pushing or pulling with the upper and lower extremities. He is able to balance and stoop, as well as climb ramps and stairs occasionally. The claimant should never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. He is unable to perform overhead reaching bilaterally. He is limited to frequent fine fingering or gross manipulation bilaterally. He is unable to perform work in extreme heat or extreme cold. He should avoid work around dangerous, moving machinery or at unprotected heights. The claimant is able to perform no more than simple, routine work because of issues of concentration due to pain.

3

*Id*. at 42. After explaining the RFC, the ALJ found at step four that, based on his RFC, age, education, and work experience, Mr. Shepherd was capable of performing past relevant work as a security guard and surveillance system monitor. *Id*. at 46. The ALJ determined that this type of work did not require performance of any work-related activities precluded by Mr. Shepherd's RFC. *Id*. Accordingly, the ALJ found at step five that Mr. Shepherd was not disabled from September 1, 2011, the alleged date of onset, through April 13, 2016, the date of the ALJ's decision. *Id*. at 48. Mr. Shepherd filed this action for review on May 26, 2017. [R. 3.]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of*

*Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Mr. Shepherd presents four arguments to this Court as grounds for relief from the ALJ's unfavorable decision. Specifically, he argues (1) the ALJ's decision that his impairments were not severe is not supported by substantial evidence, (2) the ALJ erred by finding his impairments did not meet Listing 1.04, (3) the ALJ gave insufficient weight to the opinions of Mr. Shepherd's treating physicians, and (4) the ALJ erred in determining that Mr. Shepherd could not only perform his past relevant work, but could also perform other work in the national economy.

### A

First, Mr. Shepherd argues that the ALJ's determination that his mental impairments were not severe is not supported by substantial evidence. [R. 12 at 8.] Mr. Shepherd offers the opinions of Dr. Lynch and Dr. Hoskins to demonstrate that he suffered from severe limitations from his mental status, depression, and anxiety. *Id.* However, even if substantial evidence supports the opposite conclusion, a reviewing Court must affirm the Commissioner's decision if the decision is supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). The ALJ considered his diagnoses of depression and anxiety, but these records also demonstrated that his symptoms were controlled with medication. Tr. 39. Mr. Shepherd reported that he was able to take care of his personal

5

needs and wash dishes. *Id*. at 335; 75. Furthermore, Mr. Shepherd indicated that his brothers and sisters visit him, and he is able to socialize with them all day. *Id*. at 74–75. The ALJ also analyzed records relating to Mr. Shepherd's cognitive function. She found that he reported he was able to manage his own money, and that Dr. Morgan Eckerd reported good cognitive function. *Id*. at 478; 472. While the opinions of Dr. Lynch and Dr. Hoskins may support Mr. Shepherd's position, the ALJ included substantial evidence for her decision that his mental impairments were not severe. The Court may not resolve conflicts of evidence or make credibility determinations in reviewing the ALJ. *Ulman*, 693 F.3d at 713; *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).

**B**

Next, Mr. Shepherd claims that the ALJ erred by finding his impairments did not meet Listing 1.04. [R. 8 at 5; 7; 10.] At step three, the ALJ is tasked with determining whether a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If the impairments do "meet or equal" one of those listed impairments, the claimant is deemed "disabled." *Id*. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th Cir. 2012) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990)) (emphasis in original). For a claimant to demonstrate that his "impairment is the *medical equivalent* of a listing," he must demonstrate that the impairment is "at least equal in severity and duration to the criteria of any listed impairment." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414–15 (6th Cir. 2011) (citing 20 C.F.R. § 416.926(a); 20 C.F.R. § 404.1526(a)). As the Sixth Circuit has explained, "[a]n administrative law judge

6

must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Id*. Mr. Shepherd had the burden of showing that his impairments were equal or equivalent to a listed impairment. *Malone*, 507 F. App'x at 472 (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). "To meet that burden [Mr. Shepherd] was required to point to medical signs and laboratory findings that are at least equal to a listed impairment in duration and severity." *Id*.

Mr. Shepherd now takes issue with the ALJ's discussion of whether his impairment meets or equals Listing 1.04, which is reprinted below:

> **1.04** *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> OR
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04. The ALJ considered Listing 1.04 and found that there was no evidence of compromise of a nerve root or the spinal cord. Tr. 41. Nor did the ALJ find

evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss accompanied by sensory or reflex loss, as contemplated in Subsection A. *Id*. Mr. Shepherd argues that he had evidence of motor and reflex loss, but his medical records do not corroborate this. [*Compare, e.g.* R. 8 at 7 *with* Tr. at 543.] Indeed, the medical records consistently indicate that he did *not* have motor loss accompanied by sensory or reflex loss. Tr. 397–98; 403–04; 409; 414; 419; 424; 429; 434; 446; 473; 487–88; 499; 507; 516; 524; 536; 541; 629–30; 637–38; 645; 664; 674; 686; 698; 706; 716; 724; 759; 770; 778; 786–87; 807; 816; 827; 1230; 1248; 1256; 1271; 1280; 1285; 1290; 1359. Furthermore, while Mr. Shepherd can produce records of disc bulging, none of the records he points to provide a diagnosis of either spinal arachnoiditis (Subsection B) or lumbar spinal stenosis (Subsection C). [*Compare, e.g.* R. 8 at 7 *with* Tr. at 543.]

As stated before, the burden is on Mr. Shepherd to demonstrate that his impairments were equal or equivalent to a listed impairment by pointing to specific medical evidence. *Malone*, 507 F. App'x at 472 (citing *Foster*, 279 F.3d at 354). Even if he can demonstrate the other criteria of Listing 1.04, Mr. Shepherd has no records of motor loss (atrophy with associated muscle weakness or muscle weakness), spinal arachnoiditis, or lumbar spinal stenosis. To meet the listing, the impairment must meet all, not just some, of the criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Malone*, 507 F. App'x at 472.

## C

Further, Mr. Shepherd contends the ALJ did not give sufficient weight to his treating physicians, Dr. Eckerd and Dr. Hoskins. [R. 12 at 8–10.] The Social Security Administration has set forth certain guidelines that an ALJ must follow when determining how much weight to assign a treating medical source. The regulations provide:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 404.1527(c)(2). Other factors which must be considered when the treating source opinion is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with other evidence in the record, and whether the treating source is a specialist. 20 C.F.R. §§ 404.1527(c)(2)(i)–(ii), (c)(3)–(5); 416.927(c)(2)(i)–(ii), (c)(3)–(5).

The regulations also contain a clear procedural requirement that an ALJ must give "good reasons" for discounting a treating physician's opinion, specific enough "to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." 20 C.F.R. §§ 1527(c)(2), 416.927(c)(2); Social Security Ruling ("SSR") 96-2, 1996 WL 374188, at *5 (July 2, 1996). The purpose of the reason-giving requirement is to allow "claimants to understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (cleaned up). In addition, the requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* Failure to follow the

9

procedural requirement denotes a lack of substantial evidence, even where the ALJ's conclusion may otherwise be justified on the record. *Id.* at 546.

The ALJ explained that she assigned only little weight to Dr. Hoskins opinion because the evidence did not support Dr. Hoskins's evaluation. Tr. 45. Dr. Hoskins had stated Mr. Shepherd had postural and environmental limitations, while Dr. Eckerd determined on examination that Mr. Shepherd had a normal gait and station, as well as normal grip strength and muscle strength. *Id.* at 45; 472. Even though Dr. Hoskins alleged severe limitations, Mr. Shepherd was able to demonstrate only a mildly decreased range of motion in the spine and was able to stand on his tiptoes, stand on his heels, and tandem walk without difficulty. *Id.* The ALJ only assigned partial weight to Dr. Eckerd's opinion because his opinion "was vague, did not provide supporting rationale, and no specific limitations were provided." Tr. 45. An ALJ may discount the opinion of a doctor when the opinion is not supported by objective medical evidence or if the opinion is inconsistent with the record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529–30 (6th Cir. 1997). The ALJ is only required to give a treating physician's opinions "great weight if they are supported by sufficient clinical findings and are consistent with the evidence." *Id.* at 530.

Mr. Shepherd also argues that the ALJ did not reasonably evaluate the opinion of Dr. Lynch. [R. 12 at 8.] However, the ALJ specifically relied on Dr. Lynch's evaluation when analyzing Mr. Shepherd's social functioning abilities. Tr. 39. The ALJ also relied heavily on the opinions of Dr. Brake and Dr. Rosenberg, who each considered the opinion of Dr. Lynch and discounted it. Tr. 161–75; 193–210.

Furthermore, even if substantial evidence supports the opposite conclusion, a reviewing Court must affirm the ALJ's decision if the decision is supported by substantial evidence. *See*

*Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999). While the opinions of Dr. Hoskins and Dr. Eckerd may support Mr. Shepherd's position, the ALJ included substantial evidence for her decision to assign limited weight to the opinions of Dr. Hoskins, Dr. Lynch, and Dr. Eckerd, and the records of Drs. Brake, Reed, Rosenberg, and Dawson support the ultimate determination of the ALJ. The Court may not resolve conflicts of evidence or make credibility determinations in reviewing the ALJ. *Ulman*, 693 F.3d at 713; *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Because of this, the Court does not find the ALJ's decision to assign little weight to the opinions of Drs. Hoskins, Eckerd, and Lynch to be grounds for reversal or remand.

### D

Finally, Mr. Shepherd argues that the ALJ erred in determining he could not only perform his past relevant work but could also perform other work in the national economy. [R. 12 at 11.] According to Mr. Shepherd, the ALJ cannot rely on the testimony of the vocational expert because the hypothetical questions did not include the limitations opined by Drs. Lynch and Hoskins. *Id*. However, the ALJ is only required to include "those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ had already reasonably discounted the opinions of Drs. Lynch and Hoskins and was therefore not required to include such limitations in her hypothetical questions to the vocational expert.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Michael Shepherd's Motion for Summary Judgment [**R. 12**] is **DENIED**, but the

Commissioner's Motion for Summary Judgment [**R. 14**] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 27th day of August, 2018.

Gregory F. Van Tatenhove
United States District Judge